UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABS ENTERTAINMENT, INC., an Arkansas corporation, each individually and on behalf of all others similarly situated.<br><br>         Plaintiff,<br><br>    v.<br><br>CBS CORPORATION, a Delaware corporation; CBS RADIO INC., a Delaware corporation; and DOES 1-10,<br><br>         Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff, ABS Entertainment, Inc. ("ABS") ("Plaintiff"), individually and on behalf of all other similarly situated owners of sound recordings, complains and alleges as follows:

## PRELIMINARY STATEMENT

1.    This is a class action on behalf of owners of sound recording to obtain injunctive relief and monetary damages sustained by Plaintiff and the Class because Defendants, through their actions to deliver music content through broadcast radio channels, HD radio channels, the Internet and mobile devices without consent of or licenses from Plaintiff and the Class. As a result of their pernicious, improper and illegal conduct, Defendants have reaped hundreds of millions of dollars that rightfully belong to Plaintiff and the Class.

2.    Defendant CBS Corporation Inc. (through itself and its subsidiaries, including CBS Radio Inc.) (collectively, "CBS") is one of the leading operators in the United States of media and entertainment services via broadcast and digital delivery. Specifically, CBS delivers music content through broadcast (AM and FM) radio channels, HD radio channels, the Internet and its stations' websites, and through one or more CBS mobile applications on smart phones, tablets and consoles. According to CBS, as of February 10, 2015, it owned 117 domestic radio stations, servicing 26 U.S. media markets, including 77% of the top 25 markets. (Delivery by CBS of musical content through AM and FM radio stations shall hereafter be described as the "Broadcast Service"). Many of its stations in the Broadcast Service are the most popular music stations in the applicable market, including in New York City, where CBS owns and operates WCBS – 101.1 FM, WBMP – 92.3 FM, and WWFS – 102.7 FM.

3.    CBS also streams to listeners the digital simulcast of the sound recordings being performed on its radio stations through the Internet and mobile application. (Delivery by CBS. (Delivery by CBS of musical content through the Internet shall hereafter be described as the "Internet Service"). The Broadcast Service and the Internet Service are sometimes referred to collectively as the "Music Service."

4.    CBS has not obtained performance rights licenses or paid public performance royalties to copyright owners of sound recordings of musical performances that initially were

1

fixed (*i.e.*, recorded) prior to February 15, 1972 ("Pre-1972 Recordings"). Sound recordings initially fixed on or after February 15, 1972 are subject to federal copyright protection under the United States Copyright Act and are not the subject of this lawsuit.

5.       Pre-1972 recordings comprise the historical backbone of the music industry. From Tin Pan Alley to the Big Band era to the Summer of Love, those recordings have defined generations and include the recordings of legendary artists such as Al Green, Elvis Presley, Frank Sinatra, The Turtles and The Beatles.

6.       CBS understands the value of Pre-1972 Recordings to its Music Service but has ignored the obligation to obtain licenses to exploit those recordings. Instead, CBS has chosen to copy tens of thousands of Pre-1972 Recordings to its servers and to transmit, copy, perform, broadcast and stream them to its millions of users on a daily basis without any authorization. By selling advertisements and through other means, CBS profits handsomely from its exploitation of Pre-1972 Recordings.

7.       New York common law provides protection for Pre-1972 Recordings from unauthorized reproduction, performance, distribution or other exploitation, and provides the owners of Pre-1972 Recordings the right to bring a claim for common law copyright infringement and a separate claim for unfair competition against parties who engage in such unauthorized actions. A common law copyright infringement claim in New York consists of two elements:  (1) the existence of a valid copyright; and (2) unauthorized use, reproduction or other exploitation of the work protected by the copyright. In addition to these two elements, a claim for unfair competition in New York requires competition in the marketplace or similar actions designed for commercial benefit or deception of the public.

8.       Because CBS has chosen to operate the Music Service without licenses for Pre-1972 Recordings, CBS is now liable under New York law for both common law copyright infringement and unfair competition for its unauthorized reproduction, distribution, and public performance of those recordings.

**THE PARTIES**

9.     ABS is a corporation duly organized and existing under the laws of Arkansas, with its principal place of business in West Memphis, Arkansas.

10.     Through a series of transactions, ABS acquired the exclusive ownership in the sound recordings of Al Green, Willie Mitchell, Ann Peebles, Syl Johnson, Otis Clay, Bill Black Combo, Ace Cannon and O.V Wright, a representative sample of the titles of which are specified on the attached Schedule "A" and incorporated herein by reference (the "Recordings").

11.     Plaintiff has been and continues to be engaged in the business of distributing, selling, and/or licensing the reproduction, distribution, sale, and performance of the Recordings including in records, audiovisual works, and for streaming (*i.e.*, performing) and downloading over the Internet.

12.     CBS Corporation is a corporation duly organized and existing under the laws of Delaware, with its principal place of business in New York, New York.  CBS Corporation is the parent company of CBS Radio Inc., and owns and operates the Music Service, which broadcasts music to its listeners and delivers high quality streams of music to its users.

13.     CBS Radio Inc. is a corporation duly organized and existing under the laws of Delaware, with its principal place of business in New York, New York.  CBS Radio Inc. is a wholly-owned subsidiary of Defendant CBS Corporation.

14.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as Does 1-10, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when such have been ascertained.  Upon information and belief, each of the Doe Defendants is responsible in some manner for the occurrences herein alleged, and Plaintiff's injuries as herein alleged were proximately caused by such Defendants' acts or omissions.

15.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned in this Complaint, CBS and each of the Doe Defendants was the agent of each other

3

and, in doing the things alleged in this Complaint, was acting within the course and scope of
such agency.

## JURISDICTION AND VENUE

16.    Jurisdiction exists pursuant to 28 U.S.C. § 1332(d)(2) because the matter in
controversy exceeds the sum or value of $5 million (exclusive of interest and costs), it is a class
action in which a member of a Class (defined in paragraph 35 below) is a citizen of a State
different from CBS, and the number of members of the proposed Class exceeds 100.

17.    This Court has personal jurisdiction over CBS because:  (a) CBS is engaged in a
continuing course of tortious conduct in New York by publicly performing, reproducing, and
distributing Pre-1972 Recordings within the State of New York including, without limitation,
through its broadcasting on its 3 owned and operated radio stations in New York; and (b) CBS's
conduct causes injury to Plaintiff and the Class and their intellectual property in New York.

18.    Venue in this District exists pursuant to 28 U.S.C. § 1391(b) and (c) because CBS
is subject to personal jurisdiction in this District and because a substantial part of the events or
omissions giving rise to the claims occurred in this District.  Specifically, CBS owns and
operates at least 3 radio stations in the Southern District of New York that broadcast music to
New York residents and digitally simulcasts their transmissions.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

19.    Plaintiff's Pre-1972 Recordings are the product of a significant investment of time,
effort, money and creative talent in creating, manufacturing, advertising, promoting, selling and
licensing its recordings.  In return, Plaintiff receives revenues, royalties and other compensation
from its ongoing licensing and exploitation of these works.

20.    Plaintiff receives payments for, among other uses, the distribution and reproduction
of its Pre-72 Recordings, including by offering for sale (directly or though licenses) compact
discs and digital music files for download and licensing them for use in motion pictures,
television programs and commercials.  The payments that Plaintiff receives are a main source of
revenue used to pay Plaintiff's ongoing investment and expenses, and to compensate its

4

principals, employees and representatives for their talent and work in creating the Pre-72
Recordings and for administering and collecting revenue generated by such works.  It is
extremely important to Plaintiff's business that those who make a commercial use of Plaintiff's
Pre-72 Recordings obtain licenses and pay Plaintiff for their use of Pre-72 Recordings.

21.    CBS provides the Broadcast Service to members of the public in New York and
elsewhere, and broadcasts sound recordings through numerous radio stations in New York,
including, without limitation, the following:  WCBS – 101.1 FM, Classic Hits; WBMP – 92.3
FM, Top 40; and WWFS – 102.7 FM, Adult Contemporary.  Among the sound recordings that
CBS publicly performs, reproduces and distributes through the Broadcast Service are the
Recordings.

22.    The Internet Service is provided by CBS to members of the public in New York
and elsewhere, and delivers and streams (and licenses others to deliver and stream) music
through its stations' websites, and through smart phones and tablets through its downloadable
Android and iOS Apps.  Among the sound recordings that CBS publicly performs, reproduces,
and distributes through the Internet Service are the Recordings.

23.    CBS understands that having a vast and complete range and array of music is
critical to the success of any music service, which is why Pre-1972 Recordings constitute a
significant part of the Music Service.  Through the Internet Service, CBS offers and advertises
live radio simulcast, which allows a user to select and listen to the live audio simulcast of
hundreds of radio stations throughout the United States, inclusive of radio stations owned by
CBS.  Many of these radio stations are dedicated to Pre-1972 Recordings.  CBS promotes these
stations in order to establish and increase its user base, popularity, and revenue.

24.    Plaintiff is informed and believes, and on that basis alleges, that in order to
populate the Music Service's databases and in order to broadcast and stream musical recordings
to the public, CBS has, without authorization, reproduced and copied and continues to reproduce
and copy Pre-1972 Recordings to one or more servers and storage devices, and uses technology
or systems that results in one or more copies of Pre-1972 Recordings being distributed to its

users' computers or storage devices.

25.    CBS has reproduced, performed, distributed and otherwise exploited via the Music
Service the Recordings without Plaintiff's consent.  CBS knows that it does not have any license,
right, or authority to reproduce, perform, distribute or otherwise exploit *via* the Music Service
any Pre-1972 Recordings (including the Recordings).  CBS also knows which of the recordings
its reproduces, performs, distributes or otherwise exploits *via* the Music Service are Pre-1972
Recordings.

26.    CBS's entire business is built around selling access to music and selling the music.
CBS delivers audio advertisements to its users in between songs and displays (through the
Internet Service, including mobile apps) visual ads while music is playing.

27.    Although a significant portion of CBS's revenue earned in 2014 is attributable to
Pre-72 Recordings, and though CBS capitalizes on its customers' desire to listen to these
recordings, CBS has not licensed from Plaintiff or paid to Plaintiff any royalties or other
compensation.

28.    By its conduct, CBS deprives Plaintiff and the Class of the revenues to which it and
membes of the Class are entitled.  CBS's refusal to pay for its continued use of Pre-72
Recordings directly contravenes New York law and policy, which always have provided equal, if
not greater, rights to owners of sound recordings than the federal Copyright Act.

29.    In 1972, Congress amended the United States Copyright Act to add for the first
time "sound recordings" to the list of works protected under federal copyright law.  17 U.S.C. §
102(a)(7).  At the same time, Congress also preserved "any rights or remedies under the common
law or statutes of any State" with respect to sound recordings "fixed" before February 15, 1972.
17 U.S.C. § 301(c).  As a result, pre-existing New York protection for Pre-72 Recordings was
left untouched and subject to evolution and refinement by the courts.  Congress initially limited
the federal sound recording copyright to include certain of the exclusive rights conferred on other
works – namely, the rights of reproduction, adaptation, and distribution – and to exclude the right
to publicly perform sound recordings.  New York law has never delimited, either explicitly or

implicitly, the scope of common law protection of Pre-72 Recordings, and did not exclude the right of public performance from the rights of owners in Pre-72 Recordings.

30.    This broad protection afforded to Pre-72 Recordings is consistent with the recognition by New York courts of critical, important public policy interests in providing strong state law protection for sound recordings.  These interests include ensuring that record companies receive compensation from their substantial expenditure of effort, skill and money in creating, marketing and exploiting recorded performances, as well as ensuring that the owners of sound recordings possess adequate remedies against those who misappropriate and profit from such performances.  New York's protections for sound recordings thus are complete, providing exclusive ownership and rights in Pre-72 Recordings that are not limited in any way, and that include any conduct by which individuals or entities seek to unfairly compete and profit from the skill and labor of Plaintiff by appropriating and exploiting Pre-72 Recordings for their own benefit, including by unauthorized and unlicensed reproduction and public performance of these recordings.

31.    The need for effective state law protection of Pre-72 Recordings is especially great today.  Pre-72 Recordings comprise a significant and important share of the overall body of existing musical recordings, and include some of the most popular and valued recordings in history.

32.    To address the anticipated shift in music consumption habits and the rise of digital radio services and, therefore, the need to provide *federal* protection for the performance of copyrighted sound recordings, Congress passed the Digital Performance Rights in Sound Recordings Act ("DPRA"), granting owners of *post*-72 copyrighted sound recordings the right to "perform the copyrighted work publicly by means of a digital audio transmission."  17 U.S.C. § 106(6).

33.    New York's protection for Pre-72 Recordings has never been less extensive than federal copyright protection for *post*-72 recordings.  New York had provided common law protection for Pre-72 Recordings without any exclusions and including the right of public

7

performance. Those, like CBS, who build their business and make money from the copying, reproduction and public performance of Pre-72 Recordings must obtain the right under New York law to use them and must compensate their owners.

34.  Plaintiff brings this class action on its own behalf and on behalf of all other similarly situated owners of Pre-1972 Recordings (the "Class" or "Class Members") to put an end to CBS's wholesale infringement and misappropriation of their Pre-1972 Recordings and to obtain damages, including punitive damages, and injunctive relief. Simply stated, CBS has disregarded Plaintiff and the Class's exclusive ownership of their Pre-1972 Recordings in New York, impaired their ability to sell, lawfully exploit, or otherwise control their Pre-1972 Recordings as permitted under New York law and misappropriated same for its own financial gain. CBS's conduct is causing, and will continue to cause, enormous and irreparable harm to Plaintiff and the Class unless compensatory and punitive damages are awarded against CBS and it is enjoined and restrained from engaging in further infringement and misappropriation of the Pre-1972 Recordings.

## CLASS ACTION ALLEGATIONS

35.  Plaintiff brings this action, pursuant to Fed. R. Civ. P. 23, on behalf of itself individually and on behalf of all other similarly situated owners of Pre-1972 recordings, which recordings were reproduced, performed, distributed or otherwise exploited by CBS via the Music Service in New York. The proposed Class is comprised of and defined as follows:

> All owners of sound recordings of musical performances that initially were "fixed" (*i.e.,* recorded) prior to February 15, 1972, which sound recordings were reproduced, performed, distributed and/or otherwise exploited by CBS *via* any form or method of delivery or storage (*e.g.*, terrestrial broadcast, Internet, computer, server, etc.) in New York (the "Class").

36.  This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed Class

are clearly and easily ascertainable and identifiable.

37.     The Class for whose benefit this action is brought is so numerous and
geographically dispersed that joinder of all members of the Class is impracticable.  Plaintiff is
informed and believes that there are hundreds or thousands of members of the Class whose
identity can be readily ascertained from third party, music industry sources and from CBS's
database files and records.  Therefore, the Class can be readily located and notified of this action.

38.     Plaintiff's claims are typical of the claims of the members of the Class, and
Plaintiff's interests are consistent with and not antagonistic to those of the Class it seeks to
represent.  Plaintiff and all members of the Class have sustained actual pecuniary loss and face
irreparable harm arising out of CBS's continued course of conduct as complained of herein.

39.     Plaintiff does not have any interests that are adverse to, or which conflict with, the
interests of the absent members of the Class and it is able to fairly and adequately represent and
protect the interests of such Class.  Plaintiff has raised viable statutory, misappropriation, unfair
business practices, and conversion claims of the type reasonably expected to be raised by
members of the Class, and will vigorously pursue those claims.  Plaintiff is represented by
experienced, qualified and competent counsel, who are experienced in complex commercial
litigation, class action procedures, and the legal subject matter of this dispute.  Plaintiff and its
counsel are committed to prosecuting this action vigorously.

40.     Common questions of fact or law exist as to all members of the Class that
predominate over any questions affecting only individual members of the Class.  These common
legal or factual questions, include but are not limited to, the following:

(A)     Whether CBS reproduced, performed, distributed or otherwise exploited
Pre-1972 Recordings in New York;

(B)     Whether CBS's reproduction, performance, distribution or other
exploitation of Pre-1972 Recordings in New York constitutes common law copyright
infringement under New York law;

9

(C)      Whether CBS's reproduction, performance, distribution or other exploitation of Pre-1972 Recordings in New York constitutes unfair competition in violation of New York law;

(D)      The basis on which restitution and/or damages to all injured members of the Class can be computed;

(E)      Whether CBS's violation of New York common law for copyright infringement entitles the Class to recover punitive damages;

(F)      Whether CBS's violation of New York common law for copyright infringement is continuing, thereby entitling Plaintiff and the Class to injunctive or other equitable relief;

(G)      Whether CBS's violation of New York's laws against unfair competition entitles Plaintiff and the Class to recover punitive damages; and

(H)      Whether CBS's violation of New York's laws against unfair competition is continuing, thereby entitling Plaintiff and the Class to injunctive or other relief.

41.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual litigation of the claims of all class members is impracticable.  Thus, for the vast majority of the members of the Class, the expense and burden of individual litigation would not justify pursuing the claims individually.  Even if every member of the Class could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual similar litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action presents few, if any, management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Class.  Plaintiff does not anticipate any difficulty in the management of this action as a class action.

42.    Defendants have engaged in common law copyright infringement and unfair competition, which has affected all members of the Class such that final and injunctive relief on behalf of the Class as a whole is efficient and appropriate.

## FIRST CLAIM FOR RELIEF

**(For Common Law Copyright Infringement Against All Named Defendants and Does 1-10)**

43.    Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 42, above, as though set forth in full herein.

44.    The Pre-1972 Recordings are unique intellectual property subject to common law copyright protection under the law of the State of New York.

45.    As the owners of valid common law copyrights or exclusive licensees in and to the Pre-1972 Recordings, Plaintiff and the Class possess the exclusive rights to reproduce, perform, distribute or otherwise exploit the Pre-1972 Recordings, and license, or refrain from licensing, others to do so.

46.    Plaintiff and the Class have not authorized or licensed Defendants to reproduce, perform, distribute or otherwise exploit the Pre-1972 Recordings in any manner.

47.    The distribution, reproduction, performance or other exploitation by Defendants of unauthorized copies of the Pre-1972 Recordings, including, without limitation, those listed in Schedule A, constitute infringement of Plaintiff and the Class's common law copyrights in such recordings and violation of their exclusive rights therein.  Plaintiff and the Class have invested substantial time and money in the development of their Pre-1972 Recordings.

48.    The Defendants have infringed the copyrights to the Pre-1972 Recordings at little or no cost and without license or authority.  They have copied the Pre-1972 Recordings owned by Plaintiff and the Class, and distributed and publicly perform these recordings in New York for their listeners and subscribers.  Defendants have disregarded Plaintiff and the Class's copyrights in and exclusive ownership of their Pre-1972 Recordings, impaired their ability to sell, lawfully exploit, or otherwise control their Pre-1972 Recordings, all for their own financial gain.

49.     As a direct and proximate consequence of Defendants' copyright infringement of the Pre-1972 Recordings, Plaintiff and the Class have been damaged in an amount that is not as yet fully ascertained but which Plaintiff is informed and believes, and alleges thereon, exceeds $5,000,000, according to proof.

50.     Plaintiff is informed and believes, and alleges thereon, that in engaging in the conduct described above, Defendants acted with oppression, fraud and/or malice.  Defendants's conduct has been despicable and undertaken in conscious disregard of Plaintiff and the Class's rights.  Accordingly, Plaintiff and the Class are entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of them, according to proof.

51.     Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff and the Class great and irreparable injury that cannot fully be compensated or measured in money, and for which Plaintiff and the Class have no adequate remedy at law.  Plaintiff and the Class are entitled to temporary, preliminary and permanent injunctions, prohibiting further violation of Plaintiff and the Class's rights in and exclusive ownership of their Pre-1972 Recordings in New York.

## SECOND CLAIM FOR RELIEF

### (For Unfair Competition Against All Named Defendants and Does 1-10)

52.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 42, above, as though set forth herein.

53.     Plaintiff and the Class's Pre-1972 Recordings are valuable assets to them.  Plaintiff is engaged in the selling and licensing of all forms of distribution, reproduction, performance or other exploitation of its Pre-1972 Recordings, including, without limitation, by selling physical compact discs and digital Phonorecord deliveries and licensing the master use in audio-visual recordings, such as movies and commercials.  From inception, such Pre-1972 Recordings have generated for Plaintiff millions of dollars in revenues from such selling and licensing activities.

54.     Without a license or payment, CBS copies, distributes, reproduces and performs the Pre-1972 Recordings, and allows its listeners and subscribers to listen to Pre-1972 Recordings

via terrestrial broadcast or online digital audio transmissions without purchasing or licensing them.

55.    Defendants have not paid anything to Plaintiff or the Class for distributing, reproducing and performing the Pre-1972 Recordings.  Without expending any time, labor or money of its own, Defendants have simply appropriated the commercial qualities, reputation and salable properties of the Pre-1972 Recordings, including, without limitation those recordings listed on Schedule A, by unfairly and directly competing with Plaintiff and the Class's use, sale, distribution and exploitation of the Pre-1972 Recordings.  In so doing, Defendants have undermined Plaintiff and the Class's substantial creative and financial investment for Defendants' own commercial benefit.

56.    Defendants have usurped for themselves the fruits of Plaintiff and the Class's financial and creative investments.  Defendants are profiting from the results of Plaintiff and the Class's  expenditures and skill without having to incur any expense or risk of its own in relation to the Pre-1972 Recordings.  Furthermore, Defendants' unauthorized use of the Pre-1972 Recordings is likely to cause confusion, mistake or deception as to the source, sponsorship, affiliation or connection between Plaintiff and the Class, and Defendants.

57.    Through its marketing, selling and licensing activities, Plaintiff is in the business of exploiting its Pre-1972 Recordings for Plaintiff's commercial gain.  Through marketing and operating the Music Service, Defendants are using and exploiting the Pre-1972 Recordings without license or payment for Defendants' financial gain and commercial advantage. Defendants' copying, distribution, reproduction and performance of Pre-1972 Recordings through the Music Service compete with Plaintiff in several ways.  First, Defendants copying, distribution, reproduction and performance of the Pre-1972 Recordings without a license and without payment place a significant, unfair and anticompetitive downward pressure on the licensing fees Plaintiff is able to charge consumers or other services in the marketplace who do license and pay for such rights from Plaintiff, resulting in a direct financial loss to Plaintiff. Second, as broadcasts and digital transmissions are substituting over time for sales of sound

recordings, Defendants are diverting to themselves income Plaintiff would have otherwise collected from sales of Plaintiff's Pre-1972 Recordings, resulting in Defendants' obtaining business that rightfully belongs to Plaintiff, and lost dealings and lost profits to Plaintiff from Defendants' anticompetitive acts. Such actions by Defendants are designed for their commercial benefit to the detriment of Plaintiff and the Class. As a result, Plaintiff and the Class have been harmed by lost license fees and lost sales.

58. Defendants' acts constitute a misappropriation of Plaintiff and the Class's property and rights in and to the Pre-1972 Recordings, and constitute misappropriation and unfair competition under New York law.

59. As a direct and proximate result of Defendants' misappropriation and unfair competition, Plaintiff and the Class are entitled to recover all proceeds and other compensation received or to be received by Defendants from their misappropriation and unfair competition of the Pre-1972 Recordings. Plaintiff and the Class have been damaged, and Defendants have been unjustly enriched, in an amount that is not as yet fully ascertained but which Plaintiff is informed and believes, and alleges thereon, exceeds $5,000,000, according to proof at trial. Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants are constructive trustees for the benefit of Plaintiff and the Class, and an order that Defendants convey to Plaintiff and the Class the gross receipts received or to be received that are attributable to Defendants misappropriation of the Pre-1972 Recordings.

60. Plaintiff is informed and believes, and alleges thereon, that by engaging in the conduct as described above, Defendants acted with oppression, fraud and/or malice. Defendants' conduct has been despicable and undertaken in conscious disregard of Plaintiff and the Class's rights. Accordingly, Plaintiff and the Class are entitled to an award of punitive damages against Defendants, and each of them, in an amount sufficient to punish and make an example of them according to proof at trial.

61. Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff and the Class great and irreparable injury that cannot fully be

compensated or measured in money.  Plaintiff and the Class are entitled to temporary, preliminary and permanent injunctions, prohibiting further violation of Plaintiff and the Class's right to exclusive ownership of their Pre-1972 Recordings and further acts of unfair competition and misappropriation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the Class, prays for Judgment against Defendants, and each of them, as follows:

**Regarding the Class Action:**

1. That this is a proper class action maintainable pursuant to the applicable provisions of the Federal Rules of Civil Procedure; and

2. That the named Plaintiff is appropriate to be appointed representative of the Class and its counsel be appointed as Class Counsel.

**On The First Claim For Relief For Common Law Copyright Infringement against all Defendants:**

1. For compensatory damages in excess of $5,000,000 according to proof at trial;

2. Punitive and exemplary damages according to proof trial; and

3. A temporary, preliminary, and permanent injunction enjoining and restraining Defendants, and their respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliated companies, successors, assigns, and those acting in concert with them or at their direction, from directly or indirectly infringing the copyrights in the Pre-1972 Recordings in New York in any manner, including without limitation by directly or indirectly copying, reproducing, downloading, distributing, communicating to the public, uploading, linking to, transmitting, publicly performing, or otherwise exploiting in any manner any of the Pre-1972 Recordings.

**On The Second Claim For Relief For Unfair Competition against all Defendants:**

1. For compensatory damages in excess of $5,000,000 according to proof at trial;

2. Punitive and exemplary damages according to proof at trial;

3.  Imposition of a constructive trust;

4.  Restitution of Defendants' unlawful proceeds, including Defendants' gross profits; and

5.  A temporary, preliminary, and permanent injunction enjoining and restraining
    Defendants, and their respective agents, servants, directors, officers, principals,
    employees, representatives, subsidiaries and affiliated companies, successors, assigns,
    and those acting in concert with them or at their direction, from directly or indirectly
    misappropriating in any manner the Pre-1972 Recordings, including without limitation by
    directly or indirectly copying, reproducing, downloading, distributing, communicating to
    the public, uploading, linking to, transmitting, publicly performing, or otherwise
    exploiting in any manner any of the Pre-1972 Recordings.

**<u>On All Causes of Action:</u>**

1.  For reasonable attorneys' fees and costs as permitted by law;

2.  For prejudgement interest at the legal rate; and

3.  For such other and further relief as the Court deems just and proper.

DATED:  August 27, 2015          **McKOOL SMITH HENNIGAN, P.C.**
                                 **MILLER LAW LLC**


                                 By:  /s/ Robert E. Allen
                                 _____
                                      Robert E. Allen

                                      McKOOL SMITH HENNIGAN, P.C.
                                      RODERICK G. DORMAN (*pro hac vice* app. pending)
                                      rdorman@mckoolsmithhennigan.com
                                      ROBERT E. ALLEN (*pro hac vice* app. pending)
                                      rallen@mckoolsmithhennigan.com
                                      LAWRENCE M. HADLEY (*pro hac vice* app. pending)
                                      ldadley@mckoolsmithhennigan.com
                                      ALAN P. BLOCK (*pro hac vice* app. pending)
                                      ablock@mckoolsmithhennigan.com
                                      865 S. Figueroa St., Suite 2900
                                      Los Angeles, CA 90017
                                      T:  (213) 694-1200; F:  (213) 694-1234

By: /s/ Marvin A. Miller
Marvin A. Miller

MILLER LAW LLC
MARVIN A. MILLER
mmiller@millerlawllc.com
ANDREW SZOT (*pro hac vice* app. pending)
aszot@millerlawllc.com
KATHLEEN BOYCHUCK (*pro hac vice* app. pending)
kboychuck@millerlawllc.com
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
T:  (312) 332-3400; F:  (312) 676-2676

*Attorneys for Plaintiff*
ABS ENTERTAINMENT, INC.

17

## DEMAND FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure, Rule 38(b), Plaintiff ABS

ENTERTAINMENT, INC. hereby demands a jury trial on all issues so triable.

DATED:  August 27, 2015          **McKOOL SMITH HENNIGAN, P.C.**
                                 **MILLER LAW LLC**


By:  /s/ Robert E. Allen
     Robert E. Allen

     McKOOL SMITH HENNIGAN, P.C.
     RODERICK G. DORMAN (*pro hac vice* app. pending)
     rdorman@mckoolsmithhennigan.com
     ROBERT E. ALLEN (*pro hac vice* app. pending)
     rallen@mckoolsmithhennigan.com
     LAWRENCE M. HADLEY (*pro hac vice* app. pending)
     ldadley@mckoolsmithhennigan.com
     ALAN P. BLOCK (*pro hac vice* app. pending)
     ablock@mckoolsmithhennigan.com
     865 S. Figueroa St., Suite 2900
     Los Angeles, CA 90017
     T:  (213) 694-1200; F:  (213) 694-1234


By:  /s/ Marvin A. Miller
     Marvin A. Miller

     MILLER LAW LLC
     MARVIN A. MILLER
     mmiller@millerlawllc.com
     ANDREW SZOT (*pro hac vice* app. pending)
     aszot@millerlawllc.com
     KATHLEEN BOYCHUCK (*pro hac vice* app. pending)
     kboychuck@millerlawllc.com
     115 S. LaSalle Street, Suite 2910
     Chicago, IL 60603
     T:  (312) 332-3400; F:  (312) 676-2676

     *Attorneys for Plaintiff*
     ABS ENTERTAINMENT, INC.

18