**COWAN LIEBOWITZ LATMAN**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 06/15/2016

Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, NY 10036-1525

(212) 790-9200 Tel
(212) 575-0671 Fax
www.cll.com

**Richard S. Mandel**
(212) 790-9291
rsm@cll.com

June 14, 2016

*[Handwritten note from Judge:]* This request to file an amicus brief comes late because the motion is fully briefed. The RIAA may file an amicus brief by 6/22/16. The remaining parties may file a responsive brief by 6/29/16. So ordered.
/s/ 6/15/16
U.S.D.J.
6/15/16

**VIA ECF**

The Honorable John G. Koeltl
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: ABS Entertainment, Inc. et al. v. CBS Corporation, et al.,
Case No. 15-CV-06801 (JGK)

Dear Judge Koeltl:

We represent the Recording Industry Association of America ("RIAA"), the trade organization that supports and promotes the creative and financial vitality of the major music companies. Its members comprise the most vibrant record industry in the world. Approximately 85% of all legitimate recorded music produced and sold in the United States is created, manufactured, or distributed by RIAA members. We submit this letter motion to request leave to file an amicus brief on behalf of the RIAA in connection with Defendants' pending summary judgment motion in the above-captioned matter. As set forth below, the RIAA proposes only to address one issue that is not the focus of the parties' briefing, but that has significant consequences for the recording industry and the record companies' valuable state law rights in pre-1972 sound recordings. The RIAA believes that it is well-situated to address the interplay of federal and state law that governs this issue, and to provide insight into how a ruling in this case may affect those rights.

There is no governing standard, rule or statute that prescribes the procedures for leave to file an amicus brief in the District Court, and resolution of any such request resides within the "firm discretion" of the District Court. See C&A Carbone, Inc. v. County of Rockland, 2014 U.S. Dist. LEXIS 38658 at *13 (S.D.N.Y. March 24, 2014) (allowing trade association to submit amicus brief). An amicus brief should "normally be allowed" where an amicus offers "unique information or perspective" helpful to the Court. Id. The RIAA contends that it offers such a perspective on an issue that occupies very little of the parties' briefing, but is critical to the recording industry, as set forth below.

As the Court is aware, sound recordings fixed before February 15, 1972 are protected exclusively by state law and are not subject to federal copyright protection. See 17 U.S.C. §301(c). In contrast to the preemption of other state law rights "equivalent" to those afforded by

**Cowan, Liebowitz & Latman, P.C.**
The Honorable John G. Koeltl
June 14, 2016
Page 2

the Copyright Act, §301(c) expressly provides that, with respect to pre-1972 sound recordings, "any rights or remedies under the common law or statutes of any State **shall not be annulled or limited by this title** until February 15, 2067" (emphasis added). That robust and unqualified protection for exclusive State law rights in pre-1972 sound recordings is in potential jeopardy in this matter.

The parties' briefing on summary judgment focuses primarily on whether digital remastering adds sufficient originality to create a copyrightable derivative work – an issue which the RIAA does not intend to address in this particular case. However, even if such remastered recordings are deemed to qualify for federal copyright protection, their status as derivative works under federal law cannot compromise the exclusive state law rights residing in the underlying recordings upon which such putative derivative works are based. In this case, Defendants would ignore the unqualified preservation of these state law rights expressly set forth in 17 U.S.C. §301(c). Defendants argue that, as long as they have the "right to use" the remastered recordings as authorized derivative works under federal copyright law, they are free to exploit those recordings without regard to the exclusive state law rights that attach to the original recordings on which those remasters are based. The California decision in a related case pending between these same parties makes the same error; in one conclusory paragraph, it exonerates Defendants from infringing the underlying pre-1972 sound recordings by virtue of Defendants' purported "right" to exploit the later remastered versions of those recordings under federal law. See ABS Entertainment, Inc. v. CBS Corporation, 2016 U.S. Dist. LEXIS 71470 (C.D. Cal. May 30, 2016), at *36. This logic violates basic copyright principles and has far-reaching ramifications for the recording industry.

First, any such holding would be directly contrary to §301(c), whose very purpose is to ensure that nothing "under this title" (the Copyright Act) limits state law rights in pre-1972 sound recordings. Regardless of whether a remastered recording is a derivative work or is "the same as" the original recording, there can be no dispute that exploiting a post-1972 remastering of a pre-1972 sound recording necessarily entails exploiting materials embodied in that underlying pre-1972 recording. And yet, by the California Court's and Defendants' logic, the mere advent of the remastered version divests record companies of their state law rights and remedies in the original pre-1972 recordings embodied in those remastered versions. Some of those preserved rights are in fact different from or greater than those provided by federal law in critical ways. For example, while federal copyright law imposes a compulsory license for non-interactive digital transmissions of post-1972 sound recordings, see 17 U.S.C. §114(d)(2), state law imposes no such restriction on pre-1972 recordings, leaving their owners free to negotiate or refuse licenses. Those owners should not be deprived of rights preserved under state law simply because they authorized a later remastered version that may be subject to federal copyright law. Those who would exploit such remastered versions must still obtain authorization from the owner of the underlying work, or else the congressional intent underlying §301(c) would be significantly undermined.

Second, these principles are not only apparent from the face of §301(c), but are also consonant with the general copyright law of derivative works. Even when the underlying work

Cowan, Liebowitz & Latman, P.C.
The Honorable John G. Koeltl
June 14, 2016
Page 3

itself is protected by federal copyright law, the creation of a derivative work cannot limit the scope of protection of the underlying work. 17 U.S.C. §103(b) of the Copyright Act provides:

> The copyright in a ... derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. **The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material**.

(emphasis added). See also, e.g., Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 909 n.6 (2d Cir. 1980) ("the scope of protection afforded a derivative work ... must not in any way affect the scope of any copyright protection in that preexisting material"). For this reason, as the Supreme Court has long recognized, a person's right to exploit a derivative work does not encompass the right to exploit any element of the underlying work. Stewart v. Abend, 495 U.S. 207, 223 (1990) ("The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work.") (citing cases). This principle is so embedded in copyright law that exceptions that allow exploitation of derivative works without authorization from the owner of the underlying work require special mention in the Copyright Act. See, e.g., 17 U.S.C. §203(b)(1) (after statutory termination of grant, rights revert to author except previously authorized derivative works "may continue to be utilized"); 17 U.S.C. § 304(c)(6)(A) (same). Thus, it is simply not the case that any alleged "right to use" a remastered version of a recording obviates the need to obtain authorization from the owner of the original, pre-1972 recording upon which the remastered version is based.

The RIAA respectfully submits that this important interplay between federal and state law should not be lost amidst the parties' factually intensive dispute regarding the nature and originality of the remastering process. Indeed, the key statutory provision providing that state law rights in pre-1972 sound recordings cannot be "annulled" is barely mentioned in the parties' papers. However, regardless of how the Court rules regarding the copyright status of the remasters, those later versions cannot be exploited without authorization of the owner of the original, pre-1972 sound recordings. This continued vitality of state law rights in pre-1972 sound recordings – which include some of the most historically and commercially significant recordings in history – is an issue of paramount importance to the industry the RIAA represents. Insofar as this issue appears to have taken a conceptual back seat to the parties' primary dispute about the copyright protection for remastered works, the RIAA requests leave to file an amicus brief addressed to an issue fundamental to the interests of its member companies.

           Respectfully submitted,

           Richard S. Mandel

cc:  Counsel of Record for all Parties (via ECF)